Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

Received
JAN 1 1 2019
Benefit Funds
Local 130, U.A.

FILED
1/3/2019 12:16 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15646

FILED DATE: 1/3/2019 12:16 PM   2018CH15646

| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

Summons - Alias Summons     (08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

JOSEPH PICCIOLI

(Name all parties)

v.

PLUMBERS' WELFARE FUND LOCAL 130, U

Case No. 2018CH15646

☑ SUMMONS   ☐ ALIAS SUMMONS  (312) 266-4200

To each Defendant: Plumbers Welfare Fund, 1340 W. Washington, Chg. IL 60607

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.



DIE DATE 01/27/2019

SERVICE INF ATTACHED

DOC. TYPE: CHANCERY
CASE NUMBER: 2018CH15646
DEFENDANT
PLUMBERS WELFARE FUND
1340 W WASHINGTON
CHICAGO, IL 60607

Summons - Alias Summons  (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 53969
Atty Name: DAVID NEELY
Atty. for: Plaintiff
Address: 1317 So 1st Ave.
City: Maywood
State: IL  Zip: 60153
Telephone: 708-788-9900
Primary Email: deneely1@gmail.com

Witness: _____

1/3/2019 12:16 PM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

FILED DATE: 1/3/2019 12:16 PM  2018CH15646

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

FILED DATE: 1/3/2019 12:16 PM 2018CH15646

FILED DATE: 12/18/2018 4:15 PM   2018CH15646

FILED
12/18/2018 4:15 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15646

Received
JAN 1 1 2019
Benefit Funds
Local 130, U.A.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISON

| | |
|---|---|
| JOSEPH PICCIOLI., | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) No. 2018CH15646 |
| PLUMBERS' WELFARE FUND | ) |
| LOCAL 130, U.A. | ) |
| Defendant. | ) |

## VERIFIED COMPLAINT

NOW COMES the Plaintiff, Joseph Piccioli, by and through his attorneys, David E. Neely & Associates, and in support of his complaint states as follows:

### PARTIES

1. Plaintiff, JOSEPH PICCIOLI, is a resident of the County of Cook, State of Illinois and an employee and part owner of Power Plumbing;

2. As an employee of Power Plumbing, Plaintiff is required to be a member of Plumbing Local 130 which makes group insurance available through Blue Cross Blue Shield.

3. Plaintiff's insurance benefits are self-managed through the Plumbers' Welfare Fund Local 130, U.A. (See Attached in relevant part);

4. Defendant, PLUMBERS' WELFARE FUND LOCAL 130, U.A. manages Plaintiff's insurance benefits;

### JURISDICTION AND VENUE

5. Plaintiff alleges state law claims against defendant in this Complaint and the amount in controversy exceeds $50,000.00;

6. Plaintiff further seeks declaratory and injunctive relief;

### FACTUAL ALLEGATIONS

7. On or about 2001, Plaintiff developed a spinal cord/back injury which culminated in severe back pain, multiple surgeries (e.g. carpal tunnel surgery 2002), owner transposition (2002), bone surgery (2002), elbow surgery (2002), 16 spinal cord related surgeries (2002-2007), implant of spinal cord stimulator in neck (2003), 4 trial surgeries (2003-2007), removal of spinal cord stimulator in neck (2006), and implant of spinal cord

stimulator in lower back (2017);

8. Plaintiff's associated pain continued to worsen without treatment;
9. In order to cope with his back pain, Plaintiff had a spinal cord stimulator implanted in his neck but it continued to malfunction and electrocute Plaintiff;
10. In order to cope with his pain, Plaintiff was put on so much medication that he became dependent and dysfunctional;
11. In order to cope with his pain and medication dependency Plaintiff changed doctors;
12. Plaintiff's new doctor slowly reduced Plaintiff's medication;
13. Shortly thereafter, Plaintiff began experiencing severe chronic leg and back pain;
14. Plaintiff's new doctor, Dr. Jay Joshi, started Plaintiff on "Katemine Infusions" which took away Plaintiff's pain and allowed him to become functional again.
15. Ketamine infusions changes the brain's reaction to pain and Dr. Joshi has been prescribing this treatment for his clients for years;
16. Dr. Joshi is from India and is non-white;
17. On or about 2016, the Plumber's Welfare Fund changed administrations and the new administrator, Joseph Ohm, determined that the Katamine Infusions as applied to Plaintiff are experimental and therefore not covered.
18. On several occasions Plaintiff met with the Plumbers Welfare Fund Local 130, U.A. administrator and requested him to reinstate Plaintiffs' treatment but to no avail.
19. Based upon information and belief, neither Joseph Ohm nor the Welfare Fund are certified to make a determination that Plaintiff's treatment is experimental.
20. On or about October 3, 2016, Plaintiff's doctor, Dr. Joshi received a cease and desist letter from the Plumbers Welfare Fund's attorney, asking him to cease and desist from requesting pre-certification for Plaintiff's treatment;
21. On or about December 14, 2016, Dr. Joshi sent a letter to the Plumbers' Welfare Fund Local 130, U.A. (the "Welfare Fund") seeking pre-certification for Plaintiff's Katamine Infusions.
22. The Fund, in a letter dated December 15, 2016 responded by stating in part:

*"...the Welfare Fund does not require, nor does it provide, pre-certification of medically necessary covered services performed by in-network providers. Accordingly, no pre-certification will be provided". Additionally, the Welfare Fund itself determined that Ketamine infusions are "experimental and, therefore, not medically necessary as defined by the welfare fund. Services*

2

FILED DATE: 12/18/2018 4:15 PM 2018CH15848

*deemed not to be medically necessary are not covered by the Fund".*

23. In its December 15, 2016 denial letter the Welfare Fund accused Dr. Joshi of hiding requests for pre-certification for services deep in documents, which Plaintiff interpreted the Welfare Fund as suggesting that he was misrepresenting his medical condition and treatment.
24. The Welfare Funds' denial of coverage and reimbursement for a procedure that has been covered for the five (5) years preceding the denial solely on the basis that such procedure is experimental or investigational is a mere pretext and the Fund's motivation is more syndical;
25. When Dr. Joshi's white clients go to white doctors who prescribes the same treatment the Welfare Fund does not deny treatment as experimental;
26. The Welfare Funds' did not consult with the Office of Health Care Technology within the agency for Health Care Policy and Research within the Federal Department of Health and Human Services before denying Plaintiff's request for treatment.
27. For five (5) years Plaintiff received uninterrupted treatment to manage his pain in the form of "Ketamine infusions" from Dr. Joshi.
28. Plaintiff began receiving Katemine Infusions five (5) years before they were discontinued by defendant solely based on Plaintiff's doctor's race or nationality;
29. Plaintiff has been receiving spinal injections for approximately 10 years before his treatment was terminated by defendant solely based on Plaintiff's doctor's race or nationality;
30. After 5 to 6 years, Plaintiff began receiving Katemine Infusions together with the spinal injections.
31. Since Plaintiff's Katemine Infusions were terminated he is in great pain every moment of the day, has become physically dysfunctional and unable to work;
32. After the Plumbers Welfare Fund withdrew its approval for Plaintiff's treatment, Plaintiff began to suffer unimaginable pain on a regular basis.
33. The "Spinal Cord Stimulator" implanted in Plaintiff's lower back has helped elevate the pain in his legs but not his arms.
34. After the Plumbers Welfare Fund withdrew its approval for Plaintiff's treatment, Plaintiff uncontrollably and intentionally began to mutilate his body in order to redirect the pain.

3

35. For five (5) years Plaintiff underwent Ketamine infusion which was effective in stopping his pain.
36. Plaintiff's surgeries, implants and medications have failed to bring him similar relief as Ketamine Infusions.
37. After Plaintiff receives Katemine Infusion there is substantial improvement in his condition.
38. Katemine Infusion is an effective treatment for plaintiff given that all conventional treatments for him has been exhausted.
39. Because Spinal Infusion has been successful in treating Plaintiff's pain for the last five years it not experimental.
40. Katemine Infusion is an appropriate method for managing severe spinal pain in patients undergoing treatment for the spine.
41. Katemine Infusion is accepted as a standard treatment for patients like plaintiff.
42. Dr. Joshi's responsibilities as Plaintiff's medical director included determining whether a requested medical treatment is covered under an insurance policy issued by defendant.
43. There is no evidence that defendant contacted the National Institute of Health, the National Cancer Institute, or Medicare seeking an assessment as to whether the requested treatment was experimental.
44. Defendant did not consult with the National Institute of Health or the National Cancer Institute before making the decision to deny plaintiff's request.
45. Katemine Infusion is neither an experimental therapy for spinal pain, nor a transplant within the meaning of Illinois Health Maintenance Organization Act (Ill. Rev. Stat. 1991, ch. 111 1/2, par. 1408.5) (hereinafter the Act).
46. Unless Plaintiff receives Katemine Infusions he will be unable to function as a human being and will suffer irreparable injury;
47. According to the Illinois Health Maintenance Organization Act, no contract or evidence of coverage issued by a health maintenance organization which provides coverage for health care services shall deny reimbursement for an otherwise covered expense incurred for any organ transplantation procedure on the basis that such procedure is deemed experimental or investigational unless supported by the determination of the Office of Health Care Technology Assessment within the Agency for the Health Care

4

FILED DATE: 12/18/2018 4:15 PM 2018CH15646

Policy and Research within the federal Department of Health and Human Services that such a procedure is experimental or investigational. Ill. Rev. Stat. ch. 111 1/2, para. 1408.5 (1991) cf.

48. Section 5.11 of the Health & Welfare Plan regarding "Coverage For Approved Clinical Trial" states that:

*The Plan does not cover experimental or investigative treatment, procedures or medications. However, if you participate in an "approved clinical trial", the Plan will cover routine patient costs for items and services furnished in connection with the trial, provided that such items otherwise would be covered under the Plan. "Routine patient costs" for this purpose include items and services typically provided under the Plan for a covered individual not enrolled in a clinical trial. In other words, the Plan will not deny coverage or impose additional conditions on coverage merely because you receive these items or services as part of a trial. Also, the Plan will not discriminate against you for participating in a clinical trial. This means, for example, that the Plan will not deny coverage for side effects that you develop as a result of participation in the trial. However, there is still no coverage for: (1) the experimental or investigational item or service itself, (2) items and services not included in the direct clinical management of the patient, but provided in connection with data collection and analysis, or (3) a service clearly not consistent with widely accepted and established standards of care for the particular diagnosis.*

*An "approved clinical trial" is a phase I, phase II, phase III, or phase IV clinical trial that is conducted in connection with the prevention, detection, or treatment of cancer or another life-threatening disease or condition that is (i) federally funded or approved, (ii) conducted under an investigational new drug application reviewed by the Food and Drug Administration, or (iii) a drug trial that is exempt from having such an investigational new drug application.*

49. The treatment Plaintiff seeks is covered under the policy.
50. The exclusionary language in Section 5.11 of the Health & Welfare Plan is not clear and unambiguous.
51. This exclusionary language in Section 5.11 of the Health & Welfare Plan varies greatly from the Illinois Health Maintenance Organization Act, Ill. Rev. Stat. ch. 111 1/2, para. 1408.5 (1991), that details which agencies can determine if a treatment is experimental;
52. The Welfare's Plan statement that Plaintiff's treatment is experimental is mere pretext for discrimination;
53. Plaintiff has a high chance of recovery with treatment and suffers irreparable harm without treatment;
54. The Welfare's Fund authority to declare the procedures at issue experimental is not clear and unambiguous.

5

FILED DATE: 12/18/2018 4:15 PM 2018CH15646

55. The Illinois Health Maintenance Organization Act, Ill. Rev. Stat. ch. 111 1/2, para. 1408.5 (1991), determines which agencies can determined if a treatment is experimental, but neither the Plumbers' Welfare Fund Local 139, U.A. or it's administrator is certified to make such a determination.

56. Where an insurer seeks to deny insurance coverage based on an exclusionary clause contained in an insurance policy, the clause must be clear and free from doubt (American Standard Ins. Co., 210 Ill. App. 3d at 446) unlike the one in this case.

57. Plaintiff has a right to have all doubts with respect to coverage resolved in his favor as the insured. *(Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 119, 180 Ill. Dec. 691, 607 N.E.2d 1204.)

58. As this court held in Economy Fire & Casualty Co. v. Kubik (1986), 142 Ill. App. 3d 906, 909, 97 Ill. Dec. 68, 492 N.E.2d 504, an exclusionary clause may be applied only where its terms are clear, definite and explicit.

59. The Plumbers' Welfare Fund's power to revoke treatment after five years is not clear and unambiguous.

60. Plaintiff's insurance policy does not define "Experimental."

61. The plain language of the policy does not indicate who will determine whether a certain medical board is appropriate.

62. The policy fails to outline any standards for determining how a treatment is deemed experimental.

63. The exclusionary language in plaintiff's insurance contract varies significantly from the language in section 4-5 of the Act which provides as follows:

"No contract or evidence of coverage issued by a health maintenance organization which provides coverage for health care services shall deny reimbursement for an otherwise covered expense incurred for any organ transplantation procedure on the basis that such procedure is deemed experimental or investigational unless supported by the determination of the Office of Health Care Technology Assessment within the Agency for the Health Care Policy and Research within the federal Department of Health and Human Services that such a procedure is experimental or investigational * * *." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 111 1/2, par. 1408.5.)

64. Unlike plaintiff's insurance contract, the Act specifically provides which agency has the authority to determine whether a procedure is experimental;

6

65. Plaintiff seeks a declaratory Order declaring that the requested treatment is a covered benefit under the policy;
66. At all times defendant actions were a mere pretext for discrimination because Plaintiff's doctor's race or nationality;

WHEREFORE, FOR ALL THE REASONS STATED HEREIN, Plaintiff seeks an Order or Judgment in his favor and against defendant awarding damages of not less than $50,000.00 in compensatory damages, injunctive relief from further adverse conduct, declaratory relief declaring the rights of the parties and for all costs and all other relief that is just and proper.

## COUNT I. – FRAUDULENT MISREPRESENTATION

67. Plaintiff re-alleges paragraphs 1 through 66 as paragraph 67 of Count I.
68. Defendant owed Plaintiff a duty to communicate accurate information;
69. Defendant made a false statement of material fact;
70. Defendant had knowledge or belief of the falsity of his misrepresentations;
71. Defendant breached his duty owed Plaintiff;
72. Defendant had the intention to induce the Plaintiff from receiving treatment;
73. Plaintiff took action in reliance on the truth of the statements made by defendant by seeking alternative treatments;
74. As a direct and proximate cause of defendant's misrepresentations, Plaintiff was damaged;

WHEREFORE, FOR ALL THE REASONS STATED HEREIN, Plaintiff seeks an Order or Judgment in his favor and against defendant awarding damages of not less than $50,000.00 in compensatory damages, injunctive relief from further adverse conduct, declaratory relief declaring the rights of the parties and for all costs and all other relief that is just and proper.

## COUNT II. – NEGLIGENT MISREPRESENTATION

75. Plaintiff re-alleges paragraphs 1 through 74 as paragraph 75 of Count II;
76. Defendant through its own carelessness or negligence made material misrepresentations in ascertaining the purported truth of its representations;
77. Defendant at all times owed Plaintiff a duty to communicate accurate information.
78. Defendant breached the duty he owed Plaintiff;
79. As a direct and proximate cause of defendant's conduct, plaintiff was damaged

7

WHEREFORE, FOR ALL THE REASONS STATED HEREIN, Plaintiff seeks an Order or Judgment in his favor and against defendant awarding damages of not less than $50,000.00 in compensatory damages, injunctive relief from further adverse conduct, declaratory relief declaring the rights of the parties and for all costs and all other relief that is just and proper.

### COUNT III. – INTENTIONAL INFLICTION OF EXTREME EMOTIONAL DISTRESS

80. Plaintiff re-alleges paragraphs 1 through 79 as paragraph 80 of Count III:
81. Defendant's conduct was intentional and reckless and in total disregard for Plaintiff's rights;
82. The type of harm caused by defendant was foreseeable to a reasonable person in defendant's position;
83. Defendant knew or should have known that there was a high probability that refusing to approve medical treatment would inflict severe emotional distress;
84. Regardless of the reasonable foreseeability of such conduct, defendant acted in reckless disregard of that probability;
85. Defendant's conduct is the direct and proximate cause of Plaintiff's emotional distress;

WHEREFORE, FOR ALL THE REASONS STATED HEREIN, Plaintiff seeks an Order or Judgment in his favor and against defendant awarding damages of not less than $50,000.00 in compensatory damages, injunctive relief from further adverse conduct, declaratory relief declaring the rights of the parties and for all costs and all other relief that is just and proper.

### COUNT IV. – UNJUST ENRISHMENT

86. Plaintiff re-alleges paragraphs 1 through 85 as paragraph 86 of Count IV;
87. Defendant pays insurance premiums without proper coverage;
88. Defendant has used Plaintiff's money and has been unjustly enriched;
89. As a direct and proximate cause of defendant's unjust enrichment Plaintiff has been impoverished;
90. These is a direct relation between the defendant's enrichment and plaintiff's impoverishment;
91. There is no legal justification for defendant's conduct;

8

WHEREFORE, FOR ALL THE REASONS STATED HEREIN, Plaintiff seeks an Order or Judgment in his favor and against defendant awarding damages of not less than $50,000.00 in compensatory damages, injunctive relief from further adverse conduct, declaratory relief declaring the rights of the parties and for all costs and all other relief that is just and proper.

Respectfully Submitted,
JOSEPH PICCIOLI
By: s/David Neely
One of his Attorneys
David E. Neely, J.D., Ph.D.
David E. Neely & Associates
1317 South 1ST. Ave,
Maywood, Illinois 60153
312-315-8241
deneely1@gmail.com

### ATTORNEY'S CERTIFICATION

I, the undersigned, state that I am the attorney of record and that I represent the party who signed the forgoing document. My business address is 1317 So. 1St. Ave, Maywood, Illinois 60153. I certified that I have read the forgoing pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, said pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that said pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

By: s/David Neely

### CLIENT'S CERTIFICATION

Under penalties of law as provided by 735 ILCS Section 5/1-109 of the Code of Civil Procedure, the undersigned Plaintiff, JOSEPH PICCIOLI, do hereby state and affirm that the facts alleged herein are true and correct, except as to those matters therein stated to be based on information and belief.

BY: s/ JOSEPH PICCIOLI

9