IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH PICCIOLI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 19-cv-00586 |
| | ) |
| PLUMBERS WELFARE FUND | ) Judge John J. Tharp, Jr. |
| LOCAL 130, U.A. | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Mr. Joseph Piccioli, an employee and part-owner of Power Plumbing, sued his health and welfare plan sponsor, Plumbers Welfare Fund Local 130, U.A., for vicarious racial discrimination. Piccioli alleges that the Fund denied covering his treatments for spinal pain because his doctor was Indian, in violation of 42 U.S.C. § 1981 ("Section 1981"). The defendant moves to dismiss this complaint based on the plaintiff's lack of standing, ERISA preemption, the statute of limitations, and failure to state a claim. The plaintiff has failed to state a claim under Section 1981. For this reason, the Court grants the defendant's motion to dismiss with prejudice.

### BACKGROUND

Plumbers Welfare Fund Local 130, U.A. (the "Fund") sponsors a multi-employer health and welfare plan for individuals in the construction industry. Mem. in Support of Mot. to Dismiss ("MTD") at 1, ECF No. 18. Ten trustees oversee the Health and Welfare Plan (the "Plan"), half of whom represent Union plumbing contractors and half of whom represent the Chicago Journeyman Plumbers' Union, Local 130, U.A. *See* Health and Welfare Plan Summary Plan Document ("SPD") Introduction, ECF No. 18-2. The Fund's Trustees hold exclusive discretionary authority to determine coverage and benefit eligibility for its participants. Mem. in Support of MTD at 8, ECF

No. 18. Piccioli is an employee and part owner of Power Plumbing, a member of Plumbing Local 130, and a Fund participant. Am. Compl. ¶ 1, ECF. No. 15.

In 2001, Piccioli sustained a spinal cord injury that triggered a host of medical issues and procedures, including multiple spinal cord surgeries and spinal cord stimulator implants in his neck and lower back. *Id.* ¶ 9. Between 2010 and 2016, Piccioli received Ketamine infusions and spinal injections from Dr. Jay Joshi to curb the pain, which the Fund approved for coverage. *Id.* ¶ 10-11. In early October 2016, however, the Fund sent Dr. Joshi a cease and desist letter to stop sending pre-certification approval requests for his treatments. *Id.* ¶ 14. On December 14, 2016, Piccioli sent a grievance letter, once again requesting pre-certification approval of the treatments. *Id.* ¶ 15. The Fund responded via letter the next day, informing him that it did not require or provide pre-certification approval for "medically necessary covered services performed by in-network providers." *Id.* ¶ 16. The Fund also classified Ketamine infusions as experimental treatments. *Id.* As such, they were not considered medically necessary and, the Fund maintained, therefore not covered under the Plan. *Id.*

Piccioli attributes his denial of coverage to a change in the Fund's administration, as Joseph Ohm stepped into the administrator role in 2016. *Id.* ¶ 12. According to Piccioli, the Fund denied coverage of the infusions because Dr. Joshi is Indian, while Mr. Ohm, the Fund administrator, is white.[1] *Id.* ¶ 18. He alleges that classifying the Ketamine infusions as experimental was a pretext for racial discrimination. *Id.* ¶ 37.

---

[1] The amended complaint asserts that the Fund's alleged discrimination was based on Dr. Joshi's race and national origin. Am. Compl. ¶¶ 4-5, ECF No. 15. In his response brief, however, Piccioli abandoned his argument that the Fund violated § 1981 by discriminating against Dr. Joshi based on his national origin. Pl.'s Resp. at 2, ECF No. 23; *see Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006), as amended on denial of reh'g (May 25, 2006) ("Section 1981 applies to allegations of discrimination based on race but not national origin."). The Fund makes no challenge to the characterization of Dr. Joshi's "race" as Indian.

Piccioli originally filed a complaint on December 18, 2018 in the Circuit Court of Cook County asserting only state law theories of liability. Defendant removed the case to this Court, arguing that ERISA preempted the plaintiff's claim. ECF No. 1. Plaintiff did not contest the removal and filed an amended complaint on March 15, 2019, additionally asserting that the Fund had intentionally discriminated against Dr. Joshi in violation of Section 1981. ECF No. 15. The amended complaint also set forth state law liability theories alleging violation of the Illinois Consumer Fraud Act, fraudulent misrepresentation, and intentional infliction of emotional distress. Am. Compl. ¶¶ 40, 50, 60, ECF. No. 15. Defendant filed a motion to dismiss based on ERISA preemption and failure to state a claim upon which relief can be granted. ECF No. 17.

## DISCUSSION

The Fund seeks to dismiss Piccioli's complaint in its entirety. Its lead argument is that all of the plaintiff's "claims" are preempted by ERISA. As a threshold matter, it is important to distinguish between Piccioli's claim and the theories of liability that are asserted in support of that claim. A "claim is the aggregate of operative facts which give rise to a right enforceable in the courts. One claim supported by multiple theories does not somehow become multiple claims." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (internal citations omitted).

Here, the amended complaint sets forth a single claim but multiple theories of liability. Mr. Piccioli's claim is straightforward: he alleges that the Fund denied Ketamine treatments based on the race of his doctor, Dr. Joshi. Though not required to do so, he has asserted four legal theories that, he contends, entitle him to legal relief from the Fund: (1) racial and national origin discrimination in violation of 42 U.S.C. § 1981; (2) violation of the Illinois Consumer Fraud Act ("ICFA"); (3) fraudulent misrepresentation; and (4) intentional infliction of emotional distress. The facts on which these theories are asserted are the same: each theory depends on proof that the

3

Fund intentionally based its decision not to cover Mr. Piccioli's Ketamine treatments because Dr. Joshi is Indian.

To the extent that Piccioli invokes state law theories in support of his claim, the Fund is correct that those theories cannot give rise to legal relief because they are preempted by ERISA. A court will deem a state law claim preempted by ERISA: "(1) if an individual, at some point in time, could have brought his claim under ERISA's expansive civil enforcement mechanism" and "(2) where there is no other independent legal duty that is implicated by a defendant's actions." *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 724 (7th Cir. 2017) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)).

Both of these conditions are satisfied here. Under the Plan, an initial notice denying benefits must inform the participant of his right to bring an ERISA action following an appeal, if the denial was based on a medical judgment, such as its experimental character. SPD at 66-67, ECF No. 18-2. ERISA, in turn, provides that a plan participant is entitled "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a)(1)(B) (2012). Piccioli could therefore have brought his claim that the Fund discriminated against him in denying coverage of his Ketamine treatments under ERISA.

Further, Piccioli's state law theories do not involve legal duties independent of ERISA or the Plan. In the counts in which he asserts his state law theories, Piccioli invokes the Fund's duties to provide accurate information, engage in fair practices, and refrain from causing him emotional distress. *See* Am. Compl. ¶¶ 61, 58, 63, ECF No. 15. The terms of the Plan implicate all of these duties. Specifically, the Plan delineates that the Fund must provide a participant with the "specific reason(s) for the denial" of a claim, refer to the Plan's provision on which the denial is based,

4

explain the procedure for appealing a denial, and inform the participant of his right to bring an ERISA action following an appeal. SPD at 66-67, ECF No. 18-2. Because Piccioli could have brought his claims in an ERISA suit and the alternative state law theories identified do not rely on independent legal duties, they are preempted by ERISA.

Although the Fund's preemption arguments as to Piccioli's state law theories have merit, the amended complaint also asserts a federal law theory of liability—specifically, that the Fund violated 42 U.S.C. § 1981 by denying his claim for benefits based on his doctor's race and national origin. The Fund argues that this theory, too, is preempted, but that is not correct. ERISA does not preempt other federal laws; "one federal statute would not preempt another." *Di Joseph v. Standard Ins. Co.*, 776 F. App'x 343, 349 (7th Cir. 2019). *See also Loffredo v. Daimler AG*, 54 F. Supp. 3d 729, 734 (E.D. Mich. 2014) ("As interpreted by the Supreme Court, ERISA does not preempt . . . other federal laws."); *Sanders v. Amerimed, Inc.*, 17 F. Supp. 3d 700, 705 n.7 (N.D. Ohio 2014) (ERISA "does not supersede or invalidate federal law."). *Aetna Health Inc. v. Davila*, on which the Fund relies for its argument that Piccioli's claim based on Section 1981 is preempted, addressed only preemption of state law; nothing in that opinion suggests that ERISA preempts other federal laws.

As noted above, it would, in theory, also be open to Piccioli to amend his complaint to add a claim under ERISA in addition to Section 1981. *See*, *e.g.*, *McDonald v. Household Int'l, Inc.*, 425 F.3d 424 (7th Cir. 2005) (considering viability of claim based on ERISA after concluding that state law theories identified in complaint were preempted). The Fund argues, however, that the assertion of liability under ERISA is time-barred because Piccioli failed to exhaust the administrative remedies available under the Plan. The Seventh Circuit has held that district courts may require a health plan participant to exhaust internal remedies before filing an ERISA claim.

*Robyns v. Reliance*, 130 F.3d 1231, 1235-36 (7th Cir. 1997). A district court may excuse exhaustion where a plaintiff has lacked meaningful access to the review procedures or where those remedies would be futile. *Id.* at 1236 (internal citation omitted).

Here, the Plan requires participants to exhaust all internal claims and appeals procedures before bringing any court action. *See* SPD at 60, ECF No. 18-2. One of the required procedures is appealing the Fund's benefit decision, which a participant must do "within 180 calendar days following receipt of an initial notice of denial." *Id.* at 67. If the Fund denies a participant's appeal, he must then file suit within one year of that decision. *Id.* Piccioli received notice of the denial of his Ketamine treatments on December 15, 2016 and did not take any internal remedial action. Mem. in Support of MTD at 13, ECF No. 18. Nothing in the record indicates that Piccioli lacked meaningful access to these procedures or that they were futile. As a result, liability under ERISA appears to be time-barred.

Contrary to the Fund's suggestion, however, Piccioli remained perfectly free to file a Section 1981 claim without first exhausting his internal remedies. Section 1981 provides a distinct basis for liability from ERISA and does not require that a plaintiff exhaust his administrative remedies before bringing suit. *See Donaldson v. Taylor Products Division of Tecumseh Products Co.*, 620 F.2d 155, 158 (7th Cir. 1980) (holding "that there is no exhaustion requirement" of internal union remedies under Title VII or Section 1981); *Williams v. County of Cook*, 969 F. Supp. 2d 1068, 1080 (N.D. Ill. 2013) ("Unlike Title VII claims, § 1981 and § 1983 claims do not require the plaintiff to first exhaust administrative remedies before bringing a suit in federal court.").[2]

---

[2] Prisoners, however, must exhaust available administrative remedies before bringing a suit based on Section 1983 to contest conditions of confinement. 42 U.S.C. § 1997e(a).

Accordingly, Piccioli's Section 1981 claim is not barred by his failure to pursue an administrative appeal of the Fund's denial of coverage for his Ketamine treatments.

The Fund's argument that, exhaustion or no, Piccioli's claim is time-barred under the two-year statute of limitations applicable to pre-contract formation claims under Section 1981 has more traction, however. The Seventh Circuit imposes a two-year statute of limitations on pre-contract formation Section 1981 claims and a four-year statute of limitations on post-contract formation claims. *Porter v. Pipefitters Ass'n Local Union 597, U.A.*, No. 12-cv-9844, 2013 WL 5162206, at *4 (N.D. Ill. Sept. 12, 2013); *see also, e.g.*, *Campbell v. Forest Preserve Dist. of Cook Cty.*, 752 F.3d 665, 668 (7th Cir. 2014) (post-formation claim based on § 1981 against a private actor is governed by § 1658's four-year statute of limitations). A statute of limitations is an affirmative defense, which the plaintiff is not required to negate in his complaint. *Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014). Dismissal based on an affirmative defense is only appropriate "when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).

The Fund's conduct concerned pre-contract formation, namely the alleged interference with Piccioli's ability to make and form a contract for Ketamine treatments. The two-year statute of limitations therefore applies. Per the timeline set out in the pleadings, in October 2016, the Fund sent Dr. Joshi a cease and desist letter for his requests for pre-certification approval. Am. Compl. ¶ 14, ECF No. 15. On December 14, 2016, Dr. Joshi sent a grievance letter to the Fund, again requesting pre-certification approval for the Ketamine injections. *Id.* ¶ 15. The next day, on December 15, 2016, the Fund denied the request and refused to cover the procedures because they were experimental. *Id.* ¶ 16. On December 18, 2018, Piccioli filed his initial complaint against the

7

Fund in state court—two years and two days after the conduct that gave rise to the claim occurred. Def.'s Reply at 10-11, ECF No. 24.

Piccioli asserts that he filed his lawsuit "well within the 2 year statute of limitations" because "Defendant's last act was in July 2018." Pl.'s Resp. at 13, ECF No. 23. This is the first and only time Piccioli refers to July 2018 conduct. The amended complaint centers wholly around the Fund's October and December 2016 denial of Piccioli's spinal treatments; it includes no allegations whatsoever about discriminatory acts in July 2018 or any other time after December 2016. Piccioli does not offer any further information about the Fund's "last act" or the conduct it concerned. Based on the timeline presented in the pleadings, Piccioli's claim appears to be time-barred.[3]

This brings us to the Fund's argument that the amended complaint fails to adequately plead a claim for relief under Section 1981. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff pleads facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss, the Court accepts all well-pleaded facts as true and draws all possible inferences in the plaintiff's favor. *DeGuelle v. Camilli*, 644 F.3d 192, 195 (7th Cir. 2011).

To establish a prima facie claim of discrimination in violation of Section 1981, a plaintiff "must show that (1) he is a member of a racial minority; (2) the defendants had the intent to

---

[3] This is a problem that might well be cured by further pleading. Because the Court concludes, *supra*, that Mr. Piccioli has pleaded himself out of court by alleging facts that show race discrimination was not the but-for cause of the Fund's discontinuance of his Ketamine treatments, dismissal with prejudice is nevertheless warranted.

discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract." *Pourghoraishi*, 449 F.3d at 756. The Fund argues that Piccioli's Section 1981 claim fails because he does not have standing as a non-minority individual, he has not alleged facts sufficient to show discriminatory intent or that the Fund impaired his contractual rights. Mem. in Support of MTD at 10-11, ECF No. 18; Def.'s Reply at 7, ECF No. 24. The Court addresses each of these arguments in turn.

The Fund's standing argument can be dispatched quickly. The language of Section 1981 provides that: "All persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C.A. § 1981(a) (2012). While the statute provides an express cause of action for minority individuals, courts have consistently held that it also provides an implied right of action to white citizens vicariously injured by race discrimination. *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 235 (1969) (finding white plaintiff had a § 1981 claim after a corporation refused to approve his lease to a black man); *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 312 (2d Cir. 1975) (white plaintiff had standing to sue under § 1981 after he was forced into premature retirement for selling his house to a black colleague); *Faraca v. Clements*, 506 F.2d 956, 959-60 (5th Cir. 1975) (refusal to hire a white man because of his marriage to a black woman violated § 1981). The Fund's standing argument has no legs.

The Fund also contends that the amended complaint fails to plead facts that permit a reasonable inference of discriminatory intent. The Fund relies on *Twombly*, 550 U.S. at 570, and *Iqbal*, 556 U.S. at 678, for the argument that conclusory allegations of discrimination do not suffice to state a plausible claim, but in doing so the Fund ignores the post-*Twombly* precedent from the Seventh Circuit holding that a more relaxed pleading standard applies in the analogous context of

9

discrimination claims brought under Title VII.[4] The Seventh Circuit has repeatedly held that to prevent dismissal under Rule 12(b)(6), a plaintiff "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [protected characteristic]." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *see also*, *e.g.*, *Stumm v. Wilkie*, 796 F. App'x 292, 295 (7th Cir. 2019) (in an employment discrimination case, "a plaintiff need plead only the type of discrimination, when it occurred, and by whom"); *Tomayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) ("In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense.").

To support his claim of discriminatory intent, Piccioli alleges that the Fund did not deny coverage to participants who were referred by white doctors to receive the same treatment. Am. Compl. ¶ 19, ECF No. 15. Piccioli offers these unnamed participants as comparators who allegedly received different treatment because of their doctors' race, but provides no information regarding the patients who were approved for the same treatments by white doctors such as the identities of the patients or doctors, the dates of the approvals, or even the specific type of treatment provided; it is unclear whether the "same treatment" Piccioli refers to is the Ketamine infusion or the spinal injection, both of which he received from Dr. Joshi. Nevertheless, the Seventh Circuit has held that such allegations are sufficient to satisfy the pleading standards set forth in *Twombly* and *Iqbal*. *See*, *e.g.*, *Petrovic v. Enter. Leasing Co. of Chicago, LLC*, 513 F. App'x 609, 610–11 (7th Cir. 2013) ("[A]llegations that Enterprise refused to rent him a car because he is white, and did rent

---

[4] In general, courts apply the same pleading standards in assessing the sufficiency of Title VII and Section 1981 theories. *See*, *e.g.*, *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir. 1996); *Hladek v. City of Calumet City, Illinois*, No. 19-cv-4490, 2020 WL 4547878, at *4 (N.D. Ill. Aug. 6, 2020); *Johnson v. Bellwood School Dist. 88*, No. 14 C 10498, 2016 WL 3476660, at *4 (N.D. Ill. June 27, 2016). *But see supra* note 5.

cars to a comparable black man and a Hispanic woman, suffice to state a plausible claim of race discrimination").

Viewed in isolation, then, Piccioli's allegations that even as the Fund discontinued coverage of his Ketamine treatments, "it approved coverage and treatment for participants referred by white doctors" might suffice to suggest a plausible claim of discrimination. But the probative force of this allegation is undermined by other allegations of the complaint acknowledging that the Fund's "conduct interfered with Plaintiff's right to make and enforce contacts [sic]" not just with Dr. Joshi but also "with Blue Cross Blue Shield Insurance, medical providers that administer 'Ketamine Infusions' and spinal injections. And with Dr. Joshi as well . . . ." Am. Compl. ¶ 23, ECF No. 15; see also *id*. ¶ 25 (Fund's action "culminated into substantial barriers to plaintiff's ability to enter into contracts with medical providers"—apparently other than Dr. Joshi); ¶ 27 (Fund "prevented Plaintiff from forging new contracts with medical providers through referrals"). In asserting that the Fund's action prevented him from making contracts with other providers "as well as Dr. Joshi," Mr. Piccioli effectively torpedoes his claim that the Fund's action was based on Dr. Joshi's race.

The absence of allegations that plausibly establish that the Fund discontinued Mr. Piccioli's Ketamine treatments due to Dr. Joshi's race are critical because the Supreme Court recently held that to survive a motion to dismiss a discrimination claim predicated on Section 1981, a plaintiff must allege facts that (when taken as true) plausibly show that race was a but-for cause of his injury. *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020) ("[A] plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."); *id.* at 1014 ("[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial

11

at its end.").[5] Put differently, a plaintiff cannot survive a motion to dismiss upon a showing that racial discrimination was one factor among many in a defendant's decision. Racial discrimination must be the determining factor. *Cf. Miller v. American Airlines, Inc.*, 525 F.3d 520, 523 (7th Cir. 2008) (ADEA case also involving "but for" causation requirement). But having acknowledged that the Fund's action prevented him from contracting with other providers "as well as Dr. Joshi," Mr. Piccioli has effectively conceded that the Fund interfered with his coverage of Ketamine infusions from any provider, without regard to their identity or race.[6] He has therefore pleaded himself out of court.

Mr. Piccioli has failed to show that racial discrimination was a but-for cause of the Fund's denial of his Ketamine treatments. To the contrary, the facts alleged in the amended complaint show otherwise. Mr. Piccioli has therefore failed to state a plausible claim of intentional discrimination based on Dr. Joshi's race.

* * * * *

For the foregoing reasons, the Court grants the Fund's motion to dismiss the amended complaint. And because the facts that Mr. Piccioli alleged are inconsistent with any claim of but for causation based on race, the dismissal is with prejudice. Judgment will be entered for the defendant.

---

[5] Significantly, the Court rejected the proposition that Title VII's "motivating factor" standard of causation should apply to Section 1981 claims. *Comcast Corp.*, 140 S. Ct. at 1017. This holding impairs the pleading equivalency that is commonly attributed to Title VII and Section 1981 claims. *See infra* note 4.

[6] Piccioli's claim that the Fund impaired his right to contract because of discrimination fails for the same reason. As Piccioli acknowledged, the Fund prevented him from making and enforcing contracts with any medical provider for Ketamine infusions, regardless of the provider's race.

Dated: October 14, 2020

_____
John J. Tharp, Jr.
United States District Judge